STATE v. BURLEY EDWARD HAYES.

(Filed 22 May 1968.)

**1. Indictment and Warrant § 14;   Criminal Law § 16—**

A motion to quash in its entirety an indictment originating a prosecution in the Superior Court is properly denied when the court has jurisdiction to render judgment upon one of the counts charging a felony, even though another count charges a misdemeanor for which an inferior court has exclusive original jurisdiction.

**2. Criminal Law § 124—**

Where a verdict of guilty specifically refers to one of the counts, but not to all, it amounts to an acquittal of the counts not referred to.

**3. Criminal Law § 75—   Defendant's statements at scene of accident admissible despite failure to give Miranda warnings.**

Testimony of a police officer that when he asked the crowd gathered at the scene of an automobile accident who was the driver of the automobile, defendant stepped forward, that when asked for his driver's license and registration card, defendant replied that he had no license and that the automobile belonged to his sister, that defendant gave his sister's name, and that when asked for his sister's address defendant stated that he had stolen the automobile, *is held* properly admitted in evidence although the officer did not advise defendant of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, it appearing that defendant's admission was the result of a general police investigation at the scene of an automobile accident and was not the result of in-custody interrogation.

**4. Larceny §§ 5, 8—**

The presumption arising from the recent possession of stolen property is to be considered by the jury merely as evidential fact along with other evidence in determining whether the State has carried the burden of satisfying the jury beyond a reasonable doubt of defendant's guilt, and an instruction which in effect places the burden on defendant to offer evidence in explanation of his recent possession sufficient to raise a reasonable doubt of his guilt is prejudicial error.

APPEAL by defendant from *Crissman, J.*, 28 August 1967 Criminal Session of GUILFORD — Greensboro Division.

Criminal prosecution on an indictment containing three counts. The first count charges defendant on 26 July 1967 with the larceny of a 1964 Chevrolet, four-door sedan, color aqua, serial No. 41869C-166379, of the value of $1,200, the property of Bamby Bakers, Inc.; the second count charges defendant on the same date and at the same place with receiving the same automobile well knowing that it had been theretofore feloniously stolen, taken, and carried away; and the third count charges defendant on the same day and place with unlawfully and willfully driving and carrying away a vehicle, not his own, without the consent of Bamby Bakers, Inc., the owner thereof, with intent to temporarily deprive said owner of the posses-

sion of said automobile and without intent to steal the same, a violation of G.S. 20-105.

Defendant, who was an indigent, was without counsel, and the court appointed as his counsel James L. Swisher, an attorney at law of the Guilford County Bar. Defendant entered a plea of not guilty. Verdict: "Guilty of Larceny as charged in the Bill of Indictment in Count One."

From a judgment of imprisonment for a period of not less than five nor more than seven years, defendant appealed to the Supreme Court. Whereupon, the trial court appointed James L. Swisher to perfect his appeal and to appear for him in the Supreme Court. The record on appeal and the brief of defendant were mimeographed at the expense of Guilford County in the same manner that records on appeal and briefs are prepared in the case of solvent defendants.

*Attorney General T. W. Bruton and Assistant Attorney General George A. Goodwyn for the State.*

*Cahoon & Swisher by James L. Swisher for defendant appellant.*

PARKER, C.J.    Before pleading to the indictment, defendant moved to quash it. The defendant contends that the first two counts in the indictment charge the commission of felonies, while the third count in the indictment charges the commission of a misdemeanor; and that the Municipal-County Court of the city of Greensboro has original exclusive jurisdiction over misdemeanors, and, consequently, the indictment should be quashed. This assignment of error is overruled. The third count in the indictment charges a violation of G.S. 20-105, which is a misdemeanor. So far as the record before us discloses, the criminal prosecution here on all three counts was upon an indictment which originated in the Superior Court of Guilford County. The Municipal-County Court, Criminal Division, Greensboro, Guilford County, has "original, exclusive and final jurisdiction" over a violation of G.S. 20-105 committed in the city of Greensboro. Any jurisdiction the Superior Court of Guilford County obtains for a violation of G.S. 20-105 must be derivative. 1955 Session Laws, Ch. 971, sec. 3(a) and (b)(1). *S. v. Covington,* 267 N.C. 292, 148 S.E. 2d 138. The Superior Court of Guilford County under the circumstances here had no jurisdiction to try defendant for a violation of G.S. 20-105. *S. v. Covington, supra.* So far as the record before us discloses, the jury found by its verdict that defendant was "Guilty of Larceny as charged in the Bill of Indictment in Count One," and did not refer in its verdict to counts two and three in the indictment. The verdict in the case amounts to a verdict of acquittal on counts two and three

in the indictments. *S. v. Broome,* 269 N.C. 661, 153 S.E. 2d 384; *S. v. Choate,* 228 N.C. 491, 46 S.E. 2d 476; 3 Strong, N. C. Index 2d, Criminal Law, § 124.

The Superior Court of Guilford County had original jurisdiction over the offense of larceny of an automobile of the value of $1,200 as charged in the first count in the indictment, and to impose sentence upon conviction. *S. v. Cooper,* 256 N.C. 372, 124 S.E. 2d 91. The first count in the indictment charges all the essential elements of larceny of an automobile of the value of $1,200 and empowered the court to render judgment upon conviction upon the first count in the indictment. Therefore, defendant's motion to quash the indictment in its entirety was properly overruled. *S. v. Anderson,* 265 N.C. 548, 144 S.E. 2d 581; *Commonwealth v. Nichols,* 134 Mass. 531; *Tyson v. People,* 116 N.Y.S. 2d· 394; *Hardison v. State,* 226 Md. 53, 172 A. 2d 407; 27 Am. Jur., Indictments and Informations, § 129.

A summary of the State's evidence tends to show the following facts: On 26 July 1967 Bamby Bakers, Inc., owned a 1964 Chevrolet, four-door sedan, color aqua, serial No. 41869C166379, which at that time had a value of about $1,400. On the afternoon of that day this automobile was in its regular assigned parking place when it was feloniously taken and carried away. Defendant was not in any way connected with Bamby Bakers, Inc., and had no authority to drive the automobile away. That day the Greensboro Police Department was notified the automobile was missing and put out "an alert" on the air for the automobile.

W. Y. Herndon, Jr., is an officer of the Virginia State Police assigned to Mecklenburg County, Virginia, which embraces the south central part of Virginia and also Interstate Highway #85 as it comes into Virginia. On 27 July 1967, in response to a radio transmission, Herndon proceeded to the scene of an automobile wreck two miles south of Bracey, Virginia, and two and four-tenths miles north of the North Carolina State line on Interstate Highway # 85, where he found a crashed automobile. The crashed automobile was a 1964 Chevrolet sedan, aqua in color, bearing serial No. 41869C166379. The automobile was damaged on the left front fender and the left rear fender and was sitting on the right side of the highway. Several people were gathered at the scene. He asked who was the operator of the automobile. Defendant Burley Hayes stepped forward. Herndon asked him for his operator's license and his registration to the automobile, and defendant replied that he did not have an operator's license and that the automobile was his sister's. Herndon asked him his sister's name, and he replied, Juanita Hayes.

At this point defendant's counsel objected for the reason that

there had been no evidence of defendant's having been advised of his rights. Whereupon, the court excused the jury from the courtroom. In its absence Herndon testified in summary: After the defendant said the car belonged to his sister, Herndon wrote down the name, Juanita Hayes, which defendant had given him. Defendant did not tell him his sister's address. At that point defendant said: "I might as well tell you the truth now, I stole the car." At that time Herndon did not know that the automobile had been stolen. After defendant said he stole it, Herndon asked him where he got the automobile, and defendant replied, Greensboro. Herndon immediately took him before a justice of the peace and secured a warrant charging him with being a fugitive from justice. While they were in the justice of the peace's office, defendant voluntarily told Herndon that he had stolen the car because he wanted to go back to prison. He said he had friends in there, and he had none on the outside; and, if they turned him loose from this, he would do the same thing again until they took him back to prison. These statements by defendant were not made in response to questions asked him by Herndon who had in fact asked him no questions on this occasion. Herndon testified on cross-examination in the absence of the jury that he did not advise defendant that he had a right to remain silent, that he had a right to an attorney, that any statements he made could be used against him in a court of law, nor of any of his constitutional rights. After the warrant was served on defendant, another State trooper picked him up and took him to the county jail. On redirect examination Herndon testified that when defendant told him that the automobile was stolen, he went to the glove compartment and found a registration card stating that the automobile belonged to Bamby Bakers, Inc., of Greensboro.

At this time the jury returned to the courtroom, and Herndon testified in response to questions by the State, each question being objected to by defendant's counsel, that when defendant told him the automobile belonged to his sister, Juanita Hayes, Herndon asked him for her address, to which the defendant replied, "I might as well tell you the truth now, I stole the car." After defendant made that statement, Herndon looked into the glove compartment and saw that the car was registered to Bamby Bakers, Inc., Greensboro, North Carolina.

Upon his arrival at the scene of the automobile wreck, the Virginia State Policeman, Herndon, did not interrogate defendant at all, but simply asked the crowd generally who was the driver of the car, whereupon defendant stepped forward. When Herndon asked him for his driver's license, defendant replied that he did not have

one and that the automobile belonged to his sister. When Herndon asked defendant the address of his sister, defendant responded by confessing to the crime of which he stands convicted by the lower court.

H. L. Purcell is a police officer in Greensboro. In response to a report that defendant had been picked up by the Virginia State Police, he went to Virginia and served a warrant on Burley Hayes and returned him to North Carolina. This was after he waived extradition.

This is a brief summary of defendant's testimony: About 5:30 p.m. on 26 July 1967 defendant went to the bus station to return to Pageland, South Carolina, where he was working. He could not get a bus until 10:29 p.m., so he sat around the bus station, drank coffee, and took a couple of drinks of whiskey. When he was in the bus station he met four boys he used to run around with after he came out of prison. They all went to the bathroom and took a drink, and these four boys asked him if he would go with them to Virginia. They said they had an automobile. It was a green Chevrolet automobile. They left the bus station around 9:30 p.m. and traveled out to Interstate Highway #85. They stopped at a Gulf station and he bought gas. He traveled with the four boys all night. When they were approximately two miles from the Virginia line, they stopped at a Gulf station. He had not driven the car prior to that time. When they left the filling station, he started driving. When they crossed into Virginia, he was asked to stop the automobile so another boy could drive it. When he started to stop, he was going about 90 to 95 miles an hour and when he hit the brakes, the car started skidding and struck a guard rail. He had been drinking heavily all night. He threw a .32 automatic and a half-gallon of white whiskey in the river right where the automobile was wrecked. He did not know the automobile had been stolen when he started to drive it. He did not steal the automobile. He never told the officer that the automobile belonged to his sister. He did not tell the officer that he stole the automobile. He never told the officer that he wanted to go back to prison. Defendant stated in brief summary on cross-examination: The .32 automatic pistol that he was talking about is his. He carries a pistol and white lightning seven days of the week when he is in the street. He stated the police officers carry a gun and white lightning, and he feels like he can carry them just like they do. He thinks that he was convicted of larceny on 22 September 1960, he was convicted of automobile larceny on 27 January 1960, and he was convicted for mail theft on 6 May 1957; and he does not recall ever having been convicted of carrying a concealed

weapon even though he carries a .32 automatic pistol with him all the time.

Defendant assigns as error the admission in evidence over his objections and exceptions of his statements to Herndon that he had stolen the automobile and that he had stolen it because he wanted to go back to prison where his friends were. Defendant was not under arrest or in custody when the statements attributed to him were made. Herndon testified he did not know the automobile was stolen until after defendant said he stole it. When Herndon saw the wrecked automobile, it was his right to ask who the driver was; and, when defendant stepped forward indicating that he was the driver, Herndon had the further right to ask for his automobile registration card. When defendant told him the automobile was his sister's, Herndon had a right to ask her address. All of these questions were a general, on-the-scene questioning by a State trooper charged with the duty of enforcing the traffic statutes of the State of Virginia in respect to a wrecked automobile on an Interstate Highway. Defendant's voluntary incriminating statements, under the circumstances here, are not barred by the decisions in *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 10 A.L.R. 3d 974; by *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977; and by *Massiah v. United States,* 377 U.S. 201, 12 L. Ed. 2d 246, as contended by defendant. A complete answer to defendant's contentions is given in the opinion written by Bobbitt, J., in *S. v. Meadows,* 272 N.C. 327, 158 S.E. 2d 638, in which he said:

> "There is no contention that defendant was warned as to any of the constitutional rights set forth in *Miranda* prior to making the statements attributed to him. The question is whether, under the circumstances, such warning was necessary.
>
> "In *Miranda,* the majority opinion, delivered by Mr. Chief Justice Warren, states that the constitutional issue decided 'is the admissibility of statements obtained from a defendant questioned while in custody or otherwise deprived of his freedom of action in any significant way.' Repeatedly, reference is made to 'custodial interrogation.' Thus, the opinion states: '(T)he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' The opinion stated further: 'Our decision is not intended to hamper the traditional function of police officers in investigating crime.

See *Escobedo v. Illinois,* 378 U.S. 478, 492, 12 L. Ed. 2d 977, 986, 84 S. Ct. 1758. . . . Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present.' The opinion also states: 'Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.'

"As stated in *Gaudio v. State,* 1 Md. App. 455, 230 A. 2d 700: 'In the opinion *(in Miranda)* the Court discussed "custodial interrogation" at great length and the dangers against which the specific procedural safeguards are a shield were more definitely set forth in the discussion explaining the meaning above stated.' The four cases decided by *Miranda* shared salient features, among which was "incommunicado interrogation of individuals in a police-dominated atmosphere." The Court referred to the Wickersham Report in the early 1930's and to the "third degree" which flourished at that time and to cases thereafter decided by the Court in which police resorted to "physical brutality — beatings, hanging, whipping — and to sustained and protracted questioning incommunicado in order to extort confessions." It found that the use of physical brutality and violence is not relegated to the past or to any part of the country and stated that, "Unless a proper limitation upon custodial interrogation is achieved — such as these decisions will advance — there can be no assurance that practices of this nature will be eradicated in the foreseeable future." It stressed that the modern practice of in-custody interrogation is psychologically rather than physically oriented so that coercion can be mental as well as physical. It referred to police manuals and texts in which police officers are told that the "principal psychological factor contributing to a successful interrogation is privacy — being alone with the person under interrogation." '

" 'In-custody interrogation' is not involved in the factual situations here considered. . . .

\*          \*          \*

"A general investigation by police officers, when called to the scene of a shooting, automobile collision, or other occurrence calling for police investigation, including the questioning of

those present, is a far cry from the 'in-custody interrogation' condemned in *Miranda*. Here, nothing occurred that could be considered an 'incommunicado interrogation of individuals in a police-dominated atmosphere.' Defendant's assignment of error with reference to the testimony of the officers as to statements made by defendant at the scene of the shooting is without merit."

The factual situation in the *Massiah* case is completely different from the case at bar. In that case the majority opinion says: "We hold that the petitioner was denied the basic protections of that guarantee [Sixth Amendment] when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." Defendant's assignments of error to the admission of this evidence are overruled.

Defendant assigns as error the overruling of his motion for judgment of compulsory nonsuit. This assignment of error is without merit, requires no discussion, and is overruled.

Defendant assigns as error the charge on recent possession of stolen property, which is as follows:

"Now, members of the jury, where a theft is established, the recent possession of the stolen property is very generally considered a relevant circumstance tending to establish guilt, and when the possession is so recent as to make it extremely probable that the holder, the person in possession, is the thief, that is, where in absence of explanation, he could not have recently gotten possession unless he had stolen the property himself, there is a presumption justified, and in the absence of such explanation, perhaps requiring conviction. While the recent possession of stolen goods may be of such a character as to raise the presumption of guilt on the part of the holder, it is never a presumption of law in the strict sense of the term, shutting out all evidence to the contrary, but it is always a presumption of fact open to explanation when there are facts in evidence which would afford reasonable explanation of such possession consistent with the defendant's innocence, and which is accepted to explain satisfactorily, the correct rule does not require the defendant to satisfy the jury that his evidence in explanation is true, but in such case, if the testimony offered in explanation, raises a reasonable doubt of guilt, the defendant would be entitled to acquittal.

"So, members of the jury, if you find from the evidence beyond a reasonable doubt that the property described here in this

bill of indictment, this Chevrolet automobile, was stolen and that the same was found in the possession of the defendant, then the law raises the presumption that the defendant is guilty — is guilty of larceny of automobile, a theft. This presumption, however, is one of fact and not of law, and is a circumstance for your consideration bearing upon the question of the defendant's guilt; the rule being that such presumption is stronger or weaker as possession is more or less recent or remote, and the weight you will give such presumption is a matter entirely for you, and if, after considering all the evidence and circumstances in the case, you are satisfied beyond a reasonable doubt of the defendant's guilt, it would then be your duty to render a verdict of guilty. If you are not so satisfied, it would be your duty to render a verdict of not guilty."

The Attorney General states in his brief:

"Finally, defendant assigns as error the instruction of the Trial Judge with respect to the element of 'recent possession.' The State admits that a charge on the presumption arising of RECENT POSSESSION WHICH PLACES THE BURDEN ON DEFENDANT to rebut the presumption is erroneous. *State v. Ramsey,* 241 N.C. 181 (1954). See also *State v. Holloway,* 262 N.C. 753 (1964)."

This instruction which is challenged by defendant, like the one held erroneous in *S. v. Holbrook,* 223 N.C. 622, 27 S.E. 2d 725; *S. v. Ramsey,* 241 N.C. 181, 84 S.E. 2d 807; *S. v. Holloway,* 262 N.C. 753, 138 S.E. 2d 629, is not only confusing but is open to interpretation that the burden was on defendant to rebut the presumption of his guilt; whereas the presumption arising from the recent possession of stolen property "is to be considered by the jury merely as an evidential fact, along with the other evidence in the case, in determining whether the State has carried the burden of satisfying the jury beyond a reasonable doubt of the defendant's guilt." *S. v. Baker,* 213 N.C. 524, 196 S.E. 829.

What is said in *S. v. Holbrook, supra,* is applicable here:

"Under the record evidence, it appears that the instruction complained of may have weighed too heavily against the defendant. *S. v. Harrington,* 176 N.C. 716, 99 S.E. 892. It is open to interpretation that the burden was on the defendant to rebut the presumption of his guilt, whereas the presumption arising from the recent possession of stolen property 'is to be considered by the jury merely as an evidential fact, along with the other evidence in the case, in determining whether the State has car-

ried the burden of satisfying the jury beyond a reasonable doubt of the defendant's guilt.' *S. v. Baker, supra* [213 N.C. 524, 196 S.E. 829]."

The doctrine of recent possession and the guiding principles for its application are explained with care and precision by Stacy, C.J., in *S. v. Holbrook, supra,* and in *S. v. McFalls,* 221 N.C. 22, 18 S.E. 2d 700.

For error in the charge defendant is entitled to a
New trial.