STATE OF NORTH CAROLINA v. JOHN L. ENGLE AND GARLAND E. NEASE

No. 6918SC296

(Filed 18 June 1969)

**1. Constitutional Law § 32— appointment of counsel — one attorney for two defendants**

In this consolidated trial of two defendants for the crime of armed robbery, defendants were not denied the effective assistance of counsel by refusal of the court to appoint separate attorneys to represent each defendant where no conflict of interest between defendants has been shown and the record shows that appointed counsel diligently represented both defendants.

**2. Criminal Law § 34— evidence of defendant's guilt of other offenses**

While evidence of a defendant's guilt of another crime is inadmissible to show his guilt of the crime in issue when its only relevancy is to show the character of the accused or his disposition to commit a crime of the nature of the one in issue, proof of other offenses is competent when such proof tends to show quo animo, intent, design, or guilty knowledge, or make out the res gestæ, or exhibit a chain of circumstances with respect to the offense in issue, and is so connected with the offense charged as to throw light upon one or more of these questions.

**3. Criminal Law § 34— evidence of defendant's guilt of other offenses — competency**

In this prosecution for armed robbery, the trial court did not err in the admission of testimony by an assistant prison superintendent which tended

to show that shortly before the robbery occurred defendants had assaulted the witness, stolen files and two pistols from the prison safe, and escaped from prison in an automobile stolen from the witness, the testimony being competent to show a chain of circumstances leading up to the offense in issue and to identify the defendants and the weapons and automobile used in the robbery.

**4. Criminal Law § 101— mistrial — juror asleep during trial**

In this prosecution for armed robbery, the trial court did not err in refusing to order a mistrial when defense counsel advised the court that witnesses had suggested to him that one of the jurors had been sleeping during the trial, where defense counsel presented no competent evidence that any juror had been sleeping during the trial.

**5. Criminal Law § 101— motion for mistrial — failure to find facts**

The trial court did not err in failing to make findings of fact upon defendants' motion for mistrial on the ground that a juror had been sleeping during the trial where there was no competent evidence before the court upon which to make findings of fact, defense counsel having merely suggested to the court that a juror had been sleeping.

**6. Criminal Law § 154— parts of record on appeal — affidavits executed after the trial**

Affidavits in support of defendants' motion for a mistrial which were executed approximately five months after the conclusion of the trial are not properly a part of the record on appeal and will not be considered by the Court of Appeals.

ON *certiorari* to review trial of defendants before *Gwyn, J.,* 14 October 1968 Session, GUILFORD Superior Court.

Defendants were charged in identical bills of indictment with the felony of robbery with firearms. Upon their affidavits of indigency, W. Marcus Short, Esq., was appointed on 24 June 1968 to represent each defendant. According to a stipulation appearing in the record, appointed counsel for defendants asked the solicitor to request the presiding judge at the 16 September 1968 session to appoint another attorney to represent one of the defendants, and that this request was denied. Appointed counsel, W. Marcus Short, represented both defendants at their trial, at which time pleas of not guilty by reason of temporary insanity were entered.

The evidence for the State tended to show that on 16 June 1968 the two defendants were confined in the Davie County Prison Unit at Mocksville, North Carolina, where they were serving sentences imposed upon convictions of misdemeanors. As approximately 6:20 p.m. the two defendants, and another inmate, went to the prison unit office where they assaulted the assistant superintendent, took money from his wallet, took his automobile keys, and forced him to open

the unit safe. From the safe they took two 38 calibre revolvers and various prison unit records. They then handcuffed the assistant superintendent to the gun locker and drove away in his automobile.

At about 9:30 p.m. on 16 June 1968 the two defendants went into the 7-11 store in Greensboro where they purchased some beer. About 10:30 p.m. they returned, and with the threatened use of a pistol, or pistols, they took over five hundred dollars from the cash register, locked the operator and her husband in the walk-in cooler, and left in the car which they had taken from the assistant superintendent of the prison unit.

There was additional evidence for the State which tended to show that defendants gave some of the money to relatives, gave up one of the pistols to a relative, and talked about having robbed the 7-11 store. Defendant Nease was later arrested for reckless driving while driving the automobile taken from the assistant superintendent of the Davie County Prison Unit. At the time of his arrest he had $111.00 on his person and various prison unit records were found on the floor of the car. During the early hours of 17 June 1968 the defendant Engle was arrested when officers stopped a car in which he was riding. At that time Engle had four or five 38 calibre bullets in his pocket.

Defendants offered evidence which tended to show that on 16 June 1968 they were inmates at the Davie County Prison Unit; that they found a jar of whiskey in the trash can in a toilet; and that they also found some pills; that they began to take the pills and drink the whiskey, and they didn't remember anything until they waked up the next morning in jail.

From verdicts of guilty as charged, and judgments of imprisonment for terms of not less than 20 nor more than 30 years, defendants gave notice of appeal. Because of inability to complete the record on appeal within the time allowed, upon application therefor we allowed *certiorari.*

*Robert Morgan, Attorney General, by Harrison Lewis, Deputy Attorney General, and Eugene A. Smith, Trial Attorney, for the State.*

*W. Marcus Short for defendants.*

BROCK, J.

[1]    Defendants assign as error that the presiding judge at the 16 September 1968 session declined to appoint another attorney to rep-

resent one of the defendants. There is no showing in this record on appeal as to the grounds upon which such a request to the judge was made, and no exception to his ruling was entered. The only thing in the record on appeal is an undated stipulation of counsel that a request was made and denied. The defendants' exception follows this stipulation. Also we note that no motion or argument was made to the trial judge. We do not conceive that such an exception will support an assignment of error.

Nevertheless, defendants argue that they were denied effective assistance of counsel because they did not have separate attorneys appointed to represent them. There is absolutely no argument or showing of a conflict of interests between the two defendants, and the transcript of the evidence bears out that there was none. Also it appears from the entire record that the appointed counsel diligently represented both defendants.

"While the right to counsel is absolute, its exercise must be 'subject to the necessities of sound judicial administration'; and where there appears to be no conflict, the court may, in its discretion, assign to a defendant the attorney of a co-defendant. Such an assignment is not, in itself, a denial of effective assistance of counsel. Since *Glasser v. United States,* 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680 (1942), it has been clear that some conflict of interest must be shown before an appellant can successfully claim that representation by an attorney also engaged by another defendant deprived him of his right to counsel." *U. S. v. Dardi,* 330 Fed. 2d 316 (*Certiorari* denied 379 U.S. 845, 13 L. Ed. 2d 50).

[2, 3] Defendants assign as error the admission of the testimony of the assistant superintendent of the Davie County Prison Unit which tended to show an escape, an assault upon him, the larceny from the prison unit safe, and the larceny of his automobile. Evidence of a defendant's guilt of another crime is inadmissible to show his guilt of the crime in issue where its only relevancy is to show the character of the accused, or his disposition to commit a crime of the nature of the one in issue. Stansbury, N.C. Evidence 2d, § 91. However, ". . . proof of other offenses is competent when such proof tends to show quo animo, intent, design, or guilty knowledge, or make out the res gestæ, or exhibit a chain of circumstances with respect to the offense in issue, and is so connected with the offense charged as to throw light upon one or more of these questions." 2 Strong, N.C. Index 2d, Criminal Law, § 34, p. 536. Clearly the testimony of the assistant superintendent tended to show preparation by defendants, to explain their possession of firearms and corroborate the victim, to

explain their possession of the automobile and corroborate the victim. The testimony showed a chain of circumstances leading up to the offense in issue, and served to help identify the weapons, the automobile and the defendants. It was relevant for these purposes and properly admitted even though it disclosed the commission of independent offenses.

**[4]** Defendants' third and final assignment of error is to the refusal of the trial judge to order a mistrial when defense counsel advised the judge that witnesses had suggested to him that one of the jurors had been sleeping.

During the second day of the trial the transcript shows the following:

"MR. ALBRIGHT: The State of North Carolina rests its case, your Honor, against these Defendants.

"THE COURT: Is there any evidence for the Defendants?

"MR. SHORT: Your Honor, I'd like to make a motion in the absence of the jury.

"THE COURT: Go to your room, members of the jury.

"(The jurors withdraw from the Courtroom.)

"The following proceedings were had in the absence of the jury:

"THE COURT: Go ahead.

"MR. SHORT: Your Honor, at this time, I'd like to make a motion or ask your Honor's indulgence in declaring a mistrial in this case for the reason —

"THE COURT: On what grounds?

"MR. SHORT: On the grounds that the second juror from the end of the front row has been — several witnesses have called it to my attention and are willing to sign affidavits — that he has been dozing some yesterday afternoon and some this morning during the course of the trial, and I don't have their affidavits now, but it is my understanding that I wouldn't have any trouble getting them.

"THE COURT: Well, I have observed the jury all along, and I haven't seen anybody asleep. It may have looked like they were sort of drowsy at times, but they have been responsive, it seems to me.

"MR. SHORT: Your Honor, of course, I believe your prerogative is —

"THE COURT: I wouldn't declare a mistrial unless I had more grounds than that.

"MR. SHORT: I don't have the affidavits, but it is my understanding that I'd have no trouble getting them.

"THE COURT: It's hard to tell when a man is asleep. People close their eyes — I do that myself — a lot of times, concentrating. Sometimes my eyes get tired, and I close my eyes, and anyone would say that I was asleep, but I listen."

After the trial judge allowed the defendant Nease to make certain statements about the juror sleeping, the jury returned to the courtroom whereupon the following transpired:

"THE COURT: Let me ask before the case goes any further, during the progress of the trial, has any of the jurors dozed off and gone to sleep or not? If you have, I want to know it now.

"(No response.)

"THE COURT: Is there any juror who has been in such a dazed or dozed condition that he didn't hear the witness? If so, I want to hear it now.

"(No response.)"

[4] As can be seen from the foregoing there was absolutely no competent evidence before the court that any juror had been sleeping; the only thing before the court was defense counsel's suggestion that witnesses had called to his attention that a juror had dozed some that day and the day before. It seems clear that neither defense counsel nor the trial judge had observed a juror dozing or sleeping.

[5, 6] Defendants argue that the trial judge erred in failing to make findings of fact upon their motion for a mistrial. There was no competent evidence before the court upon which to make findings of fact; there was only a suggestion from defense counsel. We note that attached to the record on appeal, and agreed to by the solicitor, are seven affidavits each of which, among other things, makes the following statement: ". . . that during said trial this affiant witnessed a male Negro juror in the front row, second juror from the end away from the Judge, dozing and actually appearing to be asleep during the time that evidence was being introduced . . ." It appears from the identifications in the transcript of the trial proceedings that six of the affiants are relatives of defendant Nease (his mother, two sisters, a brother-in-law, an aunt, and an uncle), and apparently the seventh affiant is the wife of defendant Engle.

But in any event, each of the affidavits shows that it was signed on 14 or 15 April 1969, approximately five months after the conclusion of the trial. Obviously not any of these affidavits were before the trial court. We do not perceive why the solicitor agreed that these affidavits could be sent up with the record on appeal, but even his agreement does not make them a proper part of the record on appeal. We will ignore them.

Counsel has pursued every defense available to his clients, but in the trial we find

No error.

CAMPBELL and MORRIS, JJ., concur.