STATE OF NORTH CAROLINA v. GREGORY DEAN PATTERSON

No. 60

(Filed 17 May 1979)

1. **Homicide § 24.2— instructions placing burden on defendant to rebut presumptions of malice and unlawfulness**

   The trial court in a homicide case erred in instructing the jury that it could infer that defendant acted unlawfully and with malice if the State satisfied it beyond a reasonable doubt that defendant intentionally inflicted a wound on deceased with a deadly weapon causing death "and there is no other evidence which raises in your mind a reasonable doubt that the defendant acted without (sic) malice or without justification or excuse," since the instruction was susceptible to an interpretation that the jury should infer malice and unlawfulness in the absence of evidence raising a reasonable doubt as to the existence of these elements, and the instruction therefore impermissibly placed upon defendant a burden to raise a reasonable doubt as to the facts to be inferred or, in other words, to rebut the inferences themselves or else be found guilty as a result of the inferences.

2. **Homicide § 14.4— presumptions of malice and unlawfulness—when mere permissible inferences of fact**

   In a homicide case in which there is evidence tending to rebut the inferences of malice and unlawfulness that may arise upon proof of the intentional infliction of a wound with a deadly weapon proximately resulting in death, the inferences of malice and unlawfulness are mere permissible inferences of fact, and the jury should weigh the reasonableness of drawing the inferences against the contrary evidence in determining whether the State has proved malice and unlawfulness beyond a reasonable doubt.

3. **Homicide § 14.4— presumptions of malice and unlawfulness—effect of absence of contrary evidence**

   There is one important difference in the legal effect of the State's proof of the intentional infliction of a wound in a homicide case and its proof of recent possession of the stolen property in a larceny case: In a larceny case proof of recent possession raises only a permissible factual inference even if no other evidence contrary to the inference is produced, but in a homicide case, in the absence of evidence of a killing in the heat of passion or in self-defense, proof

State v. Patterson

of the intentional infliction of a wound raises not mere possible inferences but mandatory presumptions of the existence of malice and unlawfulness entitling the State at least to a conviction of murder in the second degree.

**4. Homicide §§ 14.4, 24.2— malice and unlawfulness—burden of producing evidence of nonexistence of these elements**

A defendant in a homicide case has no burden to produce evidence sufficient to raise a reasonable doubt as to the existence of malice or unlawfulness, his burden being simply to produce some evidence from which a jury could find the nonexistence of these elements, *i.e.*, to produce some evidence of a killing in the heat of passion or some evidence of self-defense from which a jury could find the existence of these things. Upon production of such evidence the burden is upon the State to prove beyond a reasonable doubt the existence of malice and the absence of self-defense.

**5. Homicide §§ 14.4, 24.2— presumptions of malice and unlawfulness—functions of court and jury**

Whether there is evidence in a homicide case from which a jury could find a killing in the heat of passion or self-defense so that the mandatory presumptions of malice and unlawfulness are transformed into permissible inferences depends largely on the quantum of the evidence rather than its quality or credibility, and this is a question for the court, not the jury. On the other hand, whether such evidence is sufficient to raise in the jury's mind a reasonable doubt as to the existence of malice and unlawfulness depends largely on its quality and credibility rather than its quantum, and this question is always for the jury under proper instructions from the court.

**6. Homicide §§ 14.4, 24.2— evidence of heat of passion and self-defense— presumptions of malice and unlawfulness—mere inferences of fact ·**

Where defendant produced evidence from which the jury could have found that he killed in the heat of passion suddenly aroused or that he killed in self-defense, the State was not entitled to the benefit of the mandatory presumptions of malice and unlawfulness but was entitled at most to the benefit of permissible inferences that these elements existed if the jury should find it had proved beyond a reasonable doubt defendant's intentional infliction of a wound with a deadly weapon resulting in death.

Justices BRITT and BROCK did not participate in the consideration or decision of this case.

BEFORE *Judge Snepp* at the 4 April 1977 Session of CATAWBA Superior Court defendant was tried on an indictment charging him with murder in the first degree of one Michael Millsap. The jury convicted defendant of second degree murder. He was sentenced to imprisonment for not less than 20 nor more than 30 years. The Court of Appeals, in an opinion by *Judge Arnold* in which *Judges Parker* and *Robert Martin* concurred, found no error. We allowed defendant's petition for further review and

denied the state's motion to dismiss defendant's appeal to this Court on 7 June 1978. The case was argued as No. 36 at the Fall Term 1978.

*Rufus L. Edmisten, Attorney General, by R. W. Newsom III, Associate Attorney, for the State.*

*Chambers, Stein, Ferguson & Becton, P.A., by J. LeVonne Chambers and Louis L. Lesesne, Jr., and Young M. Smith, Sr., Attorneys for defendant.*

EXUM, Justice.

The parties stipulated at trial that the deceased, Michael Millsap, "died March 2, 1976, as a proximate result of gunshot wounds inflicted upon him by the defendant Gregory Dean Patterson." The defense was self-defense. Defendant has presented only one assignment of error. It questions the correctness of Judge Snepp's instructions to the jury regarding the inferences of malice and unlawfulness which may arise upon proof that defendant intentionally inflicted a wound upon deceased which caused death. Disagreeing with the conclusion of the Court of Appeals, we find error in this instruction entitling defendant a new trial.

The state's evidence consisted essentially of the testimony of three witnesses to the shooting. They observed defendant and Millsap arguing at the home of Theodoria Hunter. Defendant had parked his car in the driveway. Millsap blocked the driveway with his car, got out and walked to defendant's car in which defendant was sitting. The argument ensued. Millsap jerked the keys from defendant's car, grabbed defendant by the shirt, and began hitting him. Defendant did not fight back. Millsap then threw defendant's keys at defendant and began walking toward Hunter's house. Defendant shot Millsap twice with a pistol. Millsap ran into the house and defendant followed and shot him three more times. The deceased was a large man, six feet four inches tall and weighing approximately 240 pounds. Theodoria Hunter had dated the deceased for eight years and has one five year old child by him, but she had not dated him for about three months at the time of the shooting. She was at that time dating defendant.

Defendant testified in his own behalf and offered corroborating witnesses as well as evidence of his good character and reputation. This evidence tended to show that the deceased on one occasion two months before this shooting had assaulted and threatened defendant. Defendant testified that on the day of the killing he had gone to see Theodoria Hunter. Before he could get out of his car, which was parked in her driveway, the deceased accosted him saying, "I got you now." The deceased ripped defendant's shirt, took defendant's car keys, and beat defendant severely. Defendant, temporarily blinded in his right eye, got his pistol and began shooting at the deceased. Defendant testified:

> "I got out of the car, and I couldn't see with my right eye. I just started shooting like with a water pistol; just started shooting; just started shaking, just started shooting. I do not know how many times I shot. I was excited. I was scared."

After the shooting defendant went directly to the Catawba County Sheriff's office, turned in his weapon, and reported the incident. Defendant is a relatively small man, five feet four inches tall and weighing 165 pounds.

Judge Snepp submitted four alternative verdicts to the jury: murder in the first degree, murder in the second degree, voluntary manslaughter, and not guilty. He correctly charged that in order to convict defendant of second degree murder:

> "[T]he State must prove beyond a reasonable doubt three things: First, that the defendant intentionally shot Millsap with a deadly weapon without justification or excuse;
>
> Second, that the shooting produced Millsap's death; and
>
> Third, that the defendant acted with malice."

Judge Snepp had earlier defined malice as meaning "hatred, ill-will or enmity," and also that state of mind "which prompts a person . . . to intentionally inflict a wound with a deadly weapon upon another person which proximately results in his death without just cause, excuse or justification." Immediately after giving this definition of malice he charged on the inferences which may arise from proof that defendant intentionally inflicted a wound on deceased with a deadly weapon causing death, as follows:

"Now if the State satisfies you beyond a reasonable doubt that Gregory Patterson intentionally shot Michael Millsap with a deadly weapon or that he intentionally inflicted a wound upon Millsap with a deadly weapon and thereby proximately caused Millsap's death, *and there is no evidence which raised in your mind a reasonable doubt that the defendant acted without malice or without justification or excuse*, that is, I say, that if the State satisfies you beyond a reasonable doubt that Gregory Patterson intentionally shot Michael Millsap with a deadly weapon or that he intentionally inflicted a wound upon Millsap with a deadly weapon thereby proximately causing Millsap's death, *and there is no evidence which raises in your mind a reasonable doubt that the defendant acted without malice*, you may infer that the defendant acted unlawfully and with malice.

"However, if there is other evidence, then you will also consider it in determining whether the State has proved beyond a reasonable doubt that the defendant acted with malice and without justification and excuse." (Emphasis supplied.)

Soon after the jury retired to consider their verdict they returned to the courtroom to ask for additional instructions regarding the definitions of first and second degree murder. During these additional instructions Judge Snepp charged as follows:

"Now if the State satisfies you beyond a reasonable doubt that Gregory Patterson intentionally shot Michael Millsap with a deadly weapon or that he intentionally inflicted a wound upon Millsap with a deadly weapon and thereby proximately caused Millsap's death *and there is no other evidence which raises in your mind a reasonable doubt that the defendant acted without malice or without justification or excuse* you may infer that the defendant acted unlawfully, and with malice.

"However, if there is other evidence and you will also consider it in determining whether the State has proved beyond a reasonable doubt that the defendant acted with malice and without justification and excuse." (Emphasis supplied.)

[1]  Defendant contends, and we agree, that Judge Snepp committed error in utilizing the language emphasized in the above instructions.[1]

Nowhere in his instructions did Judge Snepp tell the jury that it was not compelled to nor need it necessarily infer malice and unlawfulness, i.e., absence of justification. The instructions say, in essence, that unless the jury has a reasonable doubt as to the existence of malice and unlawfulness it "may infer" their existence upon proof of the necessary underlying facts. In this context, it is likely the jury understood the word "may" to mean "should." The complained of instructions are thus susceptible to an interpretation that the jury should infer malice and unlawfulness in the absence of evidence raising a reasonable doubt as to the existence of these elements.

So interpreted the instructions impermissibly placed upon defendant a burden to raise a reasonable doubt as to the facts to be inferred or, in other words, to rebut the inferences themselves or else be found guilty as a result of the inferences. This Court has consistently disapproved instructions which place this kind of burden upon a defendant in a criminal case. *State v. Hayes,* 273 N.C. 712, 161 S.E. 2d 185 (1968); *State v. Holloway,* 262 N.C. 753, 138 S.E. 2d 629 (1964); *State v. Ramsey,* 241 N.C. 181, 84 S.E. 2d 807 (1954); *State v. Holbrook,* 223 N.C. 622, 27 S.E. 2d 725 (1943); *State v. Baker,* 213 N.C. 524, 196 S.E. 829 (1938); *State v. Harrington,* 176 N.C. 716, 96 S.E. 892 (1918).

All of the cases cited dealt with instructions on the so-called "presumption" which arises in larceny cases upon proof of possession of stolen property by the defendant recently following its theft. While the word "presumption" is oftentimes used in this context, it is clear that recent possession is merely an evidentiary fact from which a jury may, but is not compelled, to infer that the defendant was indeed the thief. "This presumption is to be considered by the jury merely as an evidential fact, along with the other evidence in the case, in determining whether the State has carried the burden of satisfying the jury beyond a reasonable doubt of the defendant's guilt." *State v. Baker, supra,* 213 N.C. at

---

1. We note that Judge Snepp obviously intended to say in the emphasized portions of these instructions "with malice" rather than "without malice." This inadvertent misstatement, while not controlling in our decision, does contribute to the confusion which these instructions must have engendered in the jury's mind.

State v. Patterson

526, 196 S.E. at 830. In the cases cited the trial judge in instruct-ing the jury either made express reference to the defendant's duty, in the presence of the presumption, to "raise a reasonable doubt" that he in fact stole the property or phrased his instruc-tions in such a way that they could be interpreted to place this duty upon the defendant. This Court, in each case, held the in-structions to be prejudicially erroneous on the ground that the in-struction either (1) placed upon the defendant a burden to raise a reasonable doubt as to his guilt (*Holloway, Baker* and *Harrington*) or (2) impermissibly placed upon the defendant a burden to rebut a "presumption" of guilt (*Hayes, Ramsey* and *Holbrook*).

[2]   As we tried to make clear in *State v. Hankerson,* 288 N.C. 632, 649-52, 220 S.E. 2d 575, 588-89 (1975), *rev'd on other grounds,* 432 U.S. 233 (1977), the inferences of malice and unlawfulness that may arise upon proof of the intentional infliction of a wound with a deadly weapon proximately resulting in death have the same legal effect, at least in the presence of evidence tending to rebut these inferences, as does the inference of guilt in a larceny case arising from proof of recent possession. In such circumstances the inferences of malice and unlawfulness are mere inferences of fact flowing logically from proof of the intentional infliction of the wound. The inferences are rooted in human experience. Normally a person who intentionally inflicts such a wound upon another acts with malice and unlawfully. The jury, however, is not com-pelled to draw the inferences. It should weigh the reasonableness of drawing the inferences against the contrary evidence in deter-mining whether the state has proved malice and unlawfulness beyond a reasonable doubt. In explaining this effect of the in-ferences we alluded in *Hankerson* to *United States v. Barnes,* 412 U.S. 837 (1973), a case which dealt with the inference arising from defendant's possession of recently stolen property. We said, *id.* at 650-51, 220 S.E. 2d at 588-89:

"If there is evidence tending to show all elements of heat of passion on sudden provocation or self-defense the mandatory presumptions of malice and unlawfulness, respec-tively, disappear but the logical inferences remaining from the facts proved may be weighed against this evidence. In *United States v. Barnes,* 412 U.S. 837 (1973), the Supreme Court said:

'Of course, the mere fact that there is some evidence tending to explain a defendant's possession consistent with innocence does not bar instructing the jury on the inference. The jury must weigh the explanation to determine whether it is "satisfactory." . . . The jury is not bound to accept or believe any particular explanation any more than it is bound to accept the correctness of the inference. But the burden of proving beyond a reasonable doubt that the defendant did have knowledge that the property was stolen, an essential element of the crime, remains on the government.' "

[3]   There is, however, one important difference in the legal effect of the state's proof of the intentional infliction of a wound in a homicide case and its proof of recent possession of the stolen property in a larceny case. It is this difference which might have led to some confusion in the application of the principles announced in *Hankerson* and, indeed, to the instructions given by the learned trial judge in this case. In a larceny case proof of recent possession raises only a permissible factual inference even if no other evidence contrary to the inference is produced. In a homicide case, in the *absence* of evidence of a killing in the heat of passion and the *absence* of evidence of self-defense, proof of the intentional infliction of a wound raises not mere permissible inferences but mandatory presumptions of the existence of malice and unlawfulness entitling the state at least to a conviction of murder in the second degree. The effect of this mandatory presumption, as we said in *Hankerson*, 288 N.C. at 650, 220 S.E. 2d at 588,

"is simply to impose upon the defendant a burden to go forward with or produce some evidence of . . . self-defense or heat of passion on sudden provocation, or rely on such evidence as may be present in the state's case. The mandatory presumption is simply a way of stating our legal rule that in the absence of evidence of mitigating or justifying factors all killings accomplished through the intentional use of a deadly weapon are deemed to be malicious and unlawful. The prosecution need not prove malice and unlawfulness unless there is evidence in the case of their nonexistence."

We summarized the effect of all these principles on jury instructions in *Hankerson* by saying, *id.* at 651-52, 220 S.E. 2d at 589:

> "*Mullaney*, then, as we have interpreted it, requires our trial judges in homicide cases to follow these principles in their jury instructions: the State must bear the burden throughout the trial of proving each element of the crime charged including, where applicable, malice and unlawfulness beyond a reasonable doubt. The decision permits the state to rely on mandatory presumptions of malice and unlawfulness upon proof beyond a reasonable doubt that the defendant intentionally inflicted a wound upon the deceased with a deadly weapon which proximately resulted in death. If, after the mandatory presumptions are raised, there is no evidence of a heat of passion killing on sudden provocation and no evidence that the killing was in self-defense, *Mullaney* permits and our law requires the jury to be instructed that defendant must be convicted of murder in the second degree. If, on the other hand, there is evidence in the case of all the elements of heat of passion on sudden provocation the mandatory presumption of malice disappears but the logical inferences from the facts proved remain in the case to be weighed against this evidence. If upon considering all the evidence, including the inferences and the evidence of heat of passion, the jury is left with a reasonable doubt as to the existence of malice it must find the defendant not guilty of murder in the second degree and should then consider whether he is guilty of manslaughter. If there is evidence in the case of all the elements of self-defense, the mandatory presumption of unlawfulness disappears but the logical inferences from the facts proved may be weighed against this evidence. If upon considering all the evidence, including the inferences and evidence of self-defense, the jury is left with a reasonable doubt as to the existence of unlawfulness it must find the defendant not guilty."

[4, 5] Under these principles, defendant has no burden to produce evidence sufficient to raise a reasonable doubt as to the existence of malice or unlawfulness. His burden is simply to produce some evidence from which a jury *could* find the nonexistence of these elements, *i.e.*, to produce some evidence of a killing in the

heat of passion or some evidence of self-defense from which a jury *could* find the existence of these things. Upon production of such evidence the burden is upon the state to prove beyond a reasonable doubt the existence of malice and the absence of self-defense. Although the state may be aided by the inferences discussed above, these inferences do not shift to defendant any burden to raise a reasonable doubt as to the existence of the inferred facts. Whether there is evidence in the case from which a jury could find a killing in the heat of passion or self-defense so that the mandatory presumptions are transformed into permissible inferences depends largely on the quantum of the evidence rather than its quality or credibility. This is a question for the court, not the jury. No instructions on this principle should be given the jury. On the other hand whether such evidence is sufficient to raise in the jury's mind a reasonable doubt as to the existence of malice and unlawfulness depends largely on its quality and credibility rather than its quantum. This question is always for the jury under proper instructions from the court. The instructions should, however, be put in terms of the state's burden to prove every element beyond a reasonble doubt, not defendant's burden to raise a reasonable doubt since defendant has no. such burden.

The state must always bear the burden throughout the trial of proving all elements of a criminal offense beyond a reasonable doubt. *Mullaney v. Wilbur*, 421 U.S. 684 (1975); *State v. Hankerson, supra*, 288 N.C. 632, 220 S.E. 2d 575. If after considering *all* the evidence, including any permissible inferences and evidence contrary to the inferences, the jury is left with a reasonable doubt as to the existence of any element, it should find in favor of the defendant on that element. It is necessary to so instruct the jury. This much was said in *Hankerson*, as set out above. It does not follow, however, from these principles that defendant has any burden to raise a reasonable doubt. It is error to so instruct the jury. Defendant may always rest ultimately on the weakness of the state's case and the state's failure to carry its burden of proof.

[6]   Here defendant produced evidence from which a jury could have found that he killed in the heat of passion suddenly aroused or that he killed in self-defense. The state, therefore, was not entitled to the benefit of mandatory presumptions of malice and unlawfulness. It was entitled at most to the benefit of permissible

inferences that these elements existed if the jury should find it had proved beyond a reasonable doubt defendant's intentional infliction of a wound with a deadly weapon resulting in death. As we have shown, these permissible inferences place no burden upon defendant to rebut them by raising a reasonable doubt as to the existence of the inferred elements. It was error to so instruct the jury.

It is true, here, that the trial judge, in several instances, correctly placed the burden of proof on the state to satisfy the jury beyond a reasonable doubt of the existence of malice and unlawfulness, *i.e.,* the absence of self-defense. The complained of instructions, however, are susceptible to an interpretation that in order to avoid being found guilty by reason of the inferences of malice and unlawfulness the defendant must offer evidence sufficient to raise a reasonable doubt as to the existence of malice and unlawfulness. Under similar circumstances this Court said in *State v. Holloway, supra,* 262 N.C. at 755, 138 S.E. 2d at 630:

> "After telling the jurors that the burden was on the State to satisfy them beyond a reasonable doubt that defendant was guilty, the judge charged that it was defendant's duty to raise in the minds of the jury a reasonable doubt that he had neither entered the building nor stolen the televisions. The jury is not supposed to know which of two conflicting instructions is correct."

For the reasons stated, therefore, the decision of the Court of Appeals finding no error is reversed and the case is remanded to the Court of Appeals with instructions to award defendant a new trial.

Reversed and remanded.

Justices BRITT and BROCK did not participate in the consideration or decision of this case.