State v. Johnson

STATE OF NORTH CAROLINA v. HOWARD RAY JOHNSON

No. 7926SC1067

(Filed 17 June 1980)

1. **Constitutional Law § 48– codefendants represented by same counsel – no conflict of interest – no denial of effective assistance of counsel**

    Defendant failed to show that he was denied effective assistance of counsel because his attorney also represented his codefendant who was charged with the same offenses, since defendant did not contend that any conflict of interest actually existed or that he was prejudiced in any way by the joint representation.

2. **Criminal Law § 86.2– defendant's prior criminal conduct – examination for impeachment**

    The trial court did not err in permitting the prosecution to examine defendant concerning his prior criminal record and misconduct for the purpose of impeachment.

3. **Criminal Law § 117.2– charge on scrutiny of defendant's testimony – no charge given as to other interested witnesses**

    The trial court did not err in charging the jury that it should scrutinize defendant's testimony in the light of his interest in the outcome of the case, though the court did not instruct the jury that the testimony of other witnesses should be scrutinized as to their interest in the case.

4. **Homicide § 24.1– presumptions arising from use of deadly weapon – jury instructions proper**

    The trial court's use of the phrase, "and, if nothing else appears and you so find beyond a reasonable doubt," did not cause the jury to believe that the burden was on defendant to come forward with evidence disproving unlawfulness and malice arising from the use of a deadly weapon, since the court clearly instructed the jury that they could but need not infer that unlawfulness and malice arose from defendant's use of a deadly weapon.

APPEAL by defendant from *Friday, Judge.* Judgment and commitment entered 4 May 1979 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 26 March 1980.

Defendant was charged upon an indictment with murder, conspiracy to commit murder, and assault with a deadly weapon with intent to kill inflicting serious injury. A codefendant, Danny Ray Anderson, was also indicted for the same offenses, and the cases were consolidated for trial. Both defendants retained and were represented by the same attor-

ney. At trial the State's evidence tended to show that the two defendants shared an apartment, and on the evening of 19 February 1979 had a run-in outside of a night club with the deceased and Earl Lyn Deaton. Later that evening at another night club the parties confronted again. Still later that night, while Deaton and the deceased were driving along a road, they were approached by a vehicle driven by Anderson in which Johnson was a passenger. When Deaton and the deceased got out of their vehicle to see who was approaching them, Johnson and Anderson left their truck and Johnson pointed a gun at the deceased. Johnson moved closer to the deceased, and when he was within an arm's length, fired the gun into the decedent's head. The defendants quickly returned to their vehicle, drove it at Deaton, striking him, and then fled to Texas. Defendants' evidence tended to show that Johnson killed the deceased in self-defense and that Deaton was run over accidentally. The jury acquitted Anderson of all charges and found defendant Johnson guilty of second degree murder. From the judgment entered upon the verdict, defendant Johnson appeals.

*Lindsey, Schrimsher, Erwin, Bernhardt & Hewitt, P.A., by Lawrence W. Hewitt, for defendant appellant.*

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Daniel C. Oakley, for the State.*

WELLS, Judge.

[1] In his first assignment of error defendant argues that he was denied the effective assistance of counsel because his attorney also represented co-defendant Anderson, who was charged with the same offenses as appellant. Appellant does not argue that a conflict of interest actually existed as to the joint representation in this case, or that any harm or prejudice in fact resulted to him. It is defendant's position that the mere *possibility* of such a conflict from which harm *might* have resulted, no matter how remote this possibility may have been, is sufficient to have violated defendant's Sixth Amendment right to counsel. We disagree. There is no constitutional mandate requiring co-defendants who have merely potentially conflicting interests to be represented by separate counsel. As Judge Field has stated:

State v. Johnson

The appellants themselves retained their counsel which resulted in the multiple representation, and they, more than anyone, including the court, were in a position to know what facts might be developed at trial. Apparently they concluded that such representation was advantageous, and it should be noted that at no time, either prior to the trial or during the course thereof, was the issue of such multiple representation raised in any fashion. [Citation omitted.] Since we discern no conflict of interest or resultant prejudice to any of the appellants, we cannot accept their contention that they were denied the effective assistance of counsel.

*United States v. Atkinson,* 565 F. 2d 1283, 1284-1285 (4th Cir. 1977), *cert. denied,*436 U.S. 944, 56 L. Ed. 2d 785, 98 S. Ct. 2845 (1978); *accord, State v. McKenzie,* 46 N.C. App. 34, 264 S.E. 2d 391 (1980); *State v. Engle,* 5 N.C. App. 101, 167 S.E. 2d 864 (1969). In the case *sub judice,* the testimony of both defendants is virtually identical, and the appellant does not contend that any conflict of interest actually existed or that he was prejudiced in any way by the joint representation. Under these circumstances, ineffective assistance of counsel has not been shown.

[2] Defendant next argues that after defendant took the stand in his own defense the trial court improperly permitted the prosecution to examine him on his prior criminal record and misconduct. The prosecution asked the defendant a number of questions intended to show that defendant had either been charged or convicted with assault on prior occasions. Although defendant's initial response to these questions was consistently negative, on further questioning, his testimony tended to show his involvement but that his recollection of these events was somewhat different than that of the district attorney. In his responses, however, defendant admitted that on direct examination, he had not fully disclosed his prior record.

For impeachment purposes, a witness, including the defendant in a criminal case, may be cross-examined with respect to prior convictions of crime and may be asked disparaging questions concerning collateral matters relat-

ing to his criminal and degrading conduct. [Citations omitted.] With respect to such collateral matters, the answers of the witness are conclusive in the sense that the record of his convictions cannot be introduced to contradict him. [Citations omitted.] By appropriate questions, however, the cross-examiner may continue to inquire about specific convictions already denied as well as other prior unrelated criminal convictions so as to "sift the witness." [Citations omitted.]

*State v. Currie,* 293 N.C. 523, 529, 238 S.E. 2d 477, 480-481 (1977). It is also obvious from the questions asked and defendant's responses to them, that the prosecution was acting upon information and in good faith in its efforts along these lines. *See, State v. Conner,* 244 N.C. 109, 92 S.E. 2d 668 (1956); *State v. Neal,* 222 N.C. 546, 23 S.E. 2d 911 (1943). This assignment is overruled.

**[3]** The next assignment of error raised by the defendant is that the court erred in charging the jury that it should scrutinize defendants' testimony in light of their interest in the outcome of the case. The court did not instruct the jury that the testimony of other witnesses should be scrutinized as to their interest in the case. While we acknowledge that the rule is different in other jurisdictions, in North Carolina, "the trial court may instruct [the jury] on the defendant's status as an interested witness without being required to give a like instruction, without request, as to possibly interested State's witnesses." *State v. Watson,* 294 N.C. 159, 168, 240 S.E. 2d 440, 446 (1978); *see also, State v. Eakins,* 292 N.C. 445, 233 S.E. 2d 387 (1977). It should also be noted that in the present case the trial court instructed the jury that, if it believed the defendant's testimony, it should give this testimony the same weight as that of the other witnesses, and that it was for the jury, alone, to weigh the credibility and sufficiency of all the evidence in the case.

**[4]** Defendant also assigns as error a portion of the trial court's charge relating to the elements of second degree murder. The court stated:

Now, members of the jury, in that connection the Court instructs you that if the State proves beyond a reasonable

State v. Johnson

doubt that the Defendant intentionally killed Knighten with a deadly weapon or intentionally inflicted a wound upon Knighten with a deadly weapon that proximately caused his death, you may, but need not, infer, first, that the killing was unlawful; and second, that it was done with malice; and, if nothing else appears and you so find beyond a reasonable doubt, the defendant would be guilty of second-degree murder . . . .

Defendant, relying on *State v. Patterson*, 297 N.C. 247, 254 S.E. 2d 604 (1979), argues that the phrase, "and, if nothing else appears and you so find beyond a reasonable doubt" caused the jury to believe that the burden was on defendant to come forward with evidence disproving unlawfulness and malice.[1] In *Patterson*, the trial court had charged:

Now if the State satisfies you beyond a reasonable doubt that Gregory Patterson intentionally shot Michael Millsap with a deadly weapon or that he intentionally inflicted a wound upon Millsap with a deadly weapon and thereby proximately caused Millsap's death *and there is no other evidence which raises in your mind a reasonable doubt that the defendant acted without malice or without justification or excuse* you may infer that the defendant acted unlawfully, and with malice. [Court's emphasis.].

---

[1]   We believe that in this phrase the trial court was referring to the intentional killing of the decedent — that if the jury found, beyond a reasonable doubt, that the defendant intentionally killed the deceased, it could infer unlawfulness and malice. It should be noted that the disputed phrase adds no clarity to the charge and nowhere appears in the North Carolina Pattern Jury Instructions, which provides:

If the State proves beyond a reasonable doubt, or it is admitted, that the defendant intentionally killed *(name victim)* with a deadly weapon or intentionally inflicted a wound upon *(name victim)* with a deadly weapon that proximately caused his death, you may infer first, that the killing was unlawful, and second that it was done with malice, but you are not compelled to do so. You may consider these inferences along with all other facts and circumstances in determining whether the killing was unlawful and whether it was done with malice. If you infer that the killing was unlawful and was done with malice, the defendant would be guilty of second degree murder.

N.C.P.I. — Crim. § 206.10, p. 5 (1979).

State v. Johnson

297 N.C. at 251, 254 S.E. 2d at 608. The Court held:

> Nowhere in his instructions did Judge Snepp tell the jury that it was not compelled to nor need it necessarily infer malice and unlawfulness, *i.e.*, absence of justification. The instructions say, in essence, that unless the jury has a reasonable doubt as to the existence of malice and unlawfulness it "may infer" their existence upon proof of the necessary underlying facts. In this context, it is likely the jury understood the word "may" to mean "should." The complained of instructions are thus susceptible to an interpretation that the jury should infer malice and unlawfulness in the absence of evidence raising a reasonable doubt as to the existence of these elements.

297 N.C. at 252, 254 S.E. 2d at 608.

It is clear that the court's charge in the instant case is substantively distinguishable from the charge disapproved in *Patterson.* In *Patterson,* the Court found that the charge could be construed so as to require the jury to infer unlawfulness and malice. The trial court in *Patterson* never stated to the jury that these inferences were not compelled, but left the impression that the defendant had the burden of persuading the jury that the inferences should not be made. In the present case, the court explicitly charged the jury that it "may, *but need not,* infer" unlawfulness and malice [our emphasis]. Under these circumstances we view the court's charge as sufficiently clear and correct to avoid any prejudice to defendant.

No error.

Chief Judge Morris and Judge Parker concur.