STATE OF CONNECTICUT *v.* KIM R. STAFFORD

FILE No. CR 13-12210

STATE OF CONNECTICUT *v.* GARY W. CAMPBELL

FILE No. CR 13-12211

APPELLATE DIVISION OF THE CIRCUIT COURT

614

Argued May 3—decided June 11, 1971

*Charles B. Alaimo,* of Enfield, for the appellant (defendant Stafford).

*Phillip N. Armentano,* public defender, for the appellant (defendant Campbell).

*Seymour A. Rothenberg,* prosecuting attorney, for the appellee (state).

DEARINGTON, J. The information in each case is identical; the defendants were tried together, the issues and evidence are identical, and each moved to consolidate the appeals, which motions were granted. It is therefore sufficient to render a single opinion applicable to both cases. Each defendant was convicted of stealing goods exceeding $15 in

value but not exceeding $250, in violation of § 53-63 of the General Statutes, and has appealed. They have assigned error in the denial of their motions to suppress and exclude certain evidence, in the denial of their motions to dismiss the informations, in the denial of their motion to correct the finding, in rulings on evidence, and in the conclusion that on all the evidence they were each guilty of the crime charged beyond a reasonable doubt. They have also assigned error in the overruling of their claims of law. Assignments of error not pursued in the brief may be disregarded. *Bridgeport Hydraulic Co.* v. *Stratford,* 139 Conn. 388, 390; Maltbie, Conn. App. Proc. § 167.

The assignment of error directed to the conclusion reached by the court that each defendant was guilty beyond a reasonable doubt makes unnecessary a detailed consideration of the claims of error directed against the finding. *State* v. *Pundy,* 147 Conn. 7, 8. There was little or no conflicting evidence, since the only witnesses produced were state's witnesses.

In their assignment of errors and brief, the defendants claim that error was committed in the denial of their motions to suppress certain evidence as well as in the denial of their motions to dismiss the informations. It appears solely from this recitation that there was a preliminary hearing on the motions. The record does not contain a finding, a transcript or any of the other material essential for the review of such an assignment of error, and we therefore give the matter no further consideration.

The evidence for the most part parallels that shown by the finding and may be summarized as follows: At 3:10 a.m. on October 9, 1969, Joseph Bieluch, a state trooper, was patrolling route 91 in the town of Windsor. His attention was called to a

northbound car, which had entered route 91 from the Kennedy Road ramp, because the operator (Stafford) appeared very young and the car was moving slower than other traffic; it appeared to hesitate as it came on to route 91. Campbell, the only passenger, was sitting next to Stafford. The trooper stopped the car for the purpose of checking the operator's license and the registration. While the operator was getting his license, the officer observed six cases of a cola drink in cans strewn about the back-seat area, some cans in the cases and some out of the cases. The officer was aware that a bottling plant was located west of Kennedy Road, and the defendant's car, when first observed by the officer, was 1000 feet from the plant. He asked each of the young men where they had obtained the soda and each gave conflicting answers. Stafford said that Campbell had worked at the plant and had been fired and a friend, probably the plant manager, had given Campbell the soda because it was going to be thrown away. Campbell stated that Stafford had obtained the soda somewhere and they would get a receipt for it tomorrow. At this point the officer arrested each of the defendants on a charge of larceny and advised them of their rights. The officer then asked Stafford if there was anything in the trunk of the car, and he said "No." He said it was stuffed in a little bit, was jammed—which it was—and would not open. He added, "Go ahead, if you can open it." The officer was given the keys, opened the trunk and found twenty-two cases of the soda in the trunk. A case contains twenty-four cans. Thereafter, the Windsor police arrived and Campbell gave a name other than his own. James Molaskey, comptroller of the soda plant, was produced by the state and testified that each defendant had worked at the plant in the past. Within a day or two following the arrest, the comptroller testified, he discovered a quantity

of soda missing, about forty cases. The soda seized by the police was of the same type as that missing. No one at the plant had been ordered to throw any soda away. Some eighty-eight cases of the soda, or a "pallet," had been in the rear of the plant outside the building. One-half a "pallet" was later found hidden behind old wooden cases at the back of the plant where soda is not stored; the remainder was missing. The soda found hidden was returned to the plant and later sold. The wholesale value of a case of the soda is $2.65, but if the soda is sold in vending machines, it runs between fifteen and twenty-five cents a can.

The court concluded that on all the evidence each defendant was guilty of violating § 53-63 beyond a reasonable doubt.

The defendants made the following claims of law, all of which were overruled by the court: (1) The first conversation was a custodial interrogation and there was no evidence that the defendants were advised of their rights prior thereto; therefore any statements made were inadmissible as a matter of law. (2) The arrest was not based on a warrant or on probable cause and was therefore invalid, and any product thereof was inadmissible as a matter of law. (3) No connection was made at the trial between the soda seized and the soda missing from the plant, and therefore the defendants are not guilty as a matter of law. The court's rulings were correct, as will hereinafter be reflected in our opinion.

The defendants first claim that the alleged crime was a misdemeanor and a warrantless arrest in such an instance can only be made as provided in General Statutes § 6-49; that is, if the person arrested "is taken or apprehended in the act or on the speedy information of others." They argue that those conditions had not come into operation and probable

cause had not been established. The state does not rely on "speedy information," and therefore the question is whether the defendants were "taken or apprehended in the act."

"We had occasion to consider the phrase 'taken or apprehended in the act' in *Price* v. *Tehan*, 84 Conn. 164, . . . which concerned an arrest, without a warrant, for a misdemeanor. We pointed out (p. 168) that the arrest there was made on the strength of the officer's own knowledge, gained from his personal observation. . . . The essential feature of an arrest of one 'taken or apprehended in the act,' which distinguishes arrests so made from other arrests under § 6-49 without previous complaint and warrant, is that one or more of the acts constituting the crime must have occurred in the presence of the officer. An accused is lawfully 'taken or apprehended in the act' if the circumstances observed by the officer preceding the arrest, viewed in the light of common knowledge and his own training and experience, gave him probable cause to believe that a crime was being, or had just been, committed." *State* v. *DelVecchio*, 149 Conn. 567, 574, 575; *State* v. *Reynolds*, 101 Conn. 224, 229; *State* v. *Spellman*, 153 Conn. 65, 69, 70. The officer's attention was attracted to the car because of its unusual operation. When he stopped the car at 3:10 a.m., he observed an operator extremely young in appearance, and in the back seat he observed six cases or 144 cans of soda strewn about in plain view. The car had entered route 91 from Kennedy Road, where the trooper knew a bottling plant was located, and the car when first observed by the trooper was 1000 feet from the plant. The young men each gave conflicting stories as to the source of the soda. Applying the tests and limiting ourselves to the finding, as we must, we conclude that the officer had probable cause to believe a crime was being or had just been committed.

The defendants rely heavily on *State* v. *Spellman,* supra, wherein a conviction in the case of a warrantless arrest for owning or keeping alcoholic liquor with intent to sell was reversed by our Supreme Court. The facts in *Spellman* are substantially different from those in the instant case. In *Spellman,* a police officer observed the defendant engaged in a conversation with two persons, at the conclusion of which the defendant walked to the back of his car and took two bottles from the trunk. The trunk, it was later discovered, contained forty-one bottles of alcoholic liquor. He was arrested on the basis of probable cause that an illegal sale was being consummated. The court, in reversing the judgment, said that there was no finding that, at the time the two bottles were replaced in the trunk, the officer could identify the bottles as bottles containing alcoholic liquor, nor did it appear whether the two persons with whom the defendant had been talking waited on the sidewalk as he went to his car, or what became of them. The Supreme Court held that on such sketchy facts it could scarcely be said that the officer had probable cause to believe a crime was being committed. The totality of evidence in the instant case afforded the trooper, as we have found, probable cause to believe a crime was being or had just been committed.

The defendants further claim that the court erred in concluding that the interrogation at the scene was other than a custodial examination. They argue that the interrogation, if it may be so characterized, came in point of sequence prior to warning them of their rights under *Miranda* v. *Arizona,* 384 U.S. 436. The statements made by the defendants were made in the course of a routine, threshold, on-the-scene, check for the purpose of ascertaining whether the operator had an operator's license. No search was made, for the unusual amount of soda strewn about

the back seat was observed by the officer in "plain view." The record establishes that neither of the defendants was in custody, nor had they been arrested at this point. The circumstances disclosed a lack of the hallmarks of custodial interrogation, since neither defendant had been arrested or otherwise deprived of his freedom of action, nor was it shown that any inherently coercive police practice calculated to produce an involuntary confession had come into operation. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda* v. *Arizona,* supra, 478. The court was correct in concluding that the interrogation was other than a custodial examination.

The defendants, as a part of the above assignment of error, claim that they had the right to ascertain the state of mind of the trooper immediately before the arrest was made, and that an objection by the prosecutor to such a line of questioning was improperly sustained by the court. On cross-examination, the officer was asked the following questions by counsel for the defendant Stafford: "Q.—When did you notice the . . . [cola] in the back seat, Officer? A.—As I was getting the registration out of the vehicle. Q.—At that time if Mr. Stafford had closed the door and started to drive off, would you have let him go?" At this point the prosecutor objected on the ground that the question was immaterial and irrelevant and called for speculation. The objection was sustained, and the defendant took an exception. Apparently the defendant was attempting to elicit an answer that would indicate he was then deprived of his freedom. The court's ruling was correct for several reasons. First, the direct examination had not touched on the hypothetical situation assumed by the question. "Under settled Connecticut law, the scope of the cross-examination,

where, as here, there is no attack on the credibility, as such, of the witness, is limited by the scope of the direct examination." *Grievance Committee* v. *Dacey,* 154 Conn. 129, 150. Furthermore, the question assumed a situation which had not and did not come into existence; that is, the witness was, in effect, asked to assume the existence of facts not in evidence. See 3 Wharton, Criminal Evidence (12th Ed.) § 845.

The defendants, in their assignment of error directed to the court's conclusion, claim that the soda was not identified as being stolen, citing 50 Am. Jur. 2d, Larceny, § 142, to the effect that "[t]he prosecution must identify stolen property found in the possession of the accused with that for the theft of which he is indicted, and this must be done by the most direct and positive testimony of which the case is susceptible." "What is sufficient may depend, however, on the nature of the thing taken and the circumstances of the particular case, and what evidence constitutes an identification is generally a matter for the jury." Id. § 158. Molaskey could not specifically identify the soda at the police station as that stolen, but he testified that the soda examined by him at the Windsor police station was contained in the same type of can as that stolen. Such evidence tended to show that the soda found in the car was of a kind similar to that taken from the plant. See *State* v. *Gallivan,* 75 Conn. 326, 328. Mere possession of the soda, standing alone, would hardly support a reasonable inference that it was stolen from the plant. But possession superimposed, as it was, on other evidence, together with the reasonable inferences to be drawn, left little doubt that the soda was the soda taken from the bottling plant.

The defendants argue that *State* v. *Johnson,* 160 Conn. 28, supports their claim that identity was not established by the required proof. We think there

is a marked distinction. In *Johnson,* certain testimony relating to stolen dynamite was admitted on the condition it would be "tied up" with that seized. Later in the trial the defendants moved to strike the testimony on the ground it had not been connected and tended to show the commission of another crime. The motion was denied and the ruling assigned as an error on appeal. The Supreme Court held (p. 32) that the testimony was irrelevant and prejudicial, since the state failed to meet the condition on which admission was permitted and the admission of the evidence could not be justified on any other ground. Such a situation did not obtain in the instant case, since there was substantial evidence to connect the soda seized with that stolen.

The claims of law ruled on by the court adversely to the defendants and assigned as error, such as questions relating to the *Miranda* warning, probable cause, and the identity of the seized soda, require no added discussion, such claims having been previously reviewed.

In our opinion there was sufficient evidence to sustain the court's conclusion that the defendants' guilt of the offense charged had been established beyond a reasonable doubt.

There is no error.

In this opinion CASALE and DICENZO, Js., concurred.