312 So.2d 417

**Charles Cantrell WRIGHT, alias**

**v.**

**STATE.**

**6 Div. 739.**

Court of Criminal Appeals of Alabama.

March 4, 1975.

Rehearing Denied April 1, 1975.

John L. Cole, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and David L. Weathers, Asst. Atty. Gen., Birmingham, for appellee.

DeCARLO, Judge.

Larceny, six months.

Charles Cantrell Wright pleaded not guilty to an indictment charging grand larceny, buying and receiving stolen property. Appellant's demurrer was overruled and he was subsequently tried on the following facts:

On May 27, 1973, a tornado ravaged the Center Point area of Jefferson County, where Indon Industries owned the Steel City Mobile Home lot. The manager, Bob Rube testified he met Charles Wright for the first time on Monday, following the storm. Appellant asked if he could have some of the furniture that had been damaged, and Rube explained that a settlement must first be made with the insurance company. After appellant was hired to guard the lot that night, he was told that Rube and Mr. Moreland, the supervisor, would get with him as to what he could have. No mention was made about salary. As Rube was leaving about 8:30 P.M., appellant returned in a pickup truck.

Sergeant S. W. Latta of the Jefferson County Sheriff's Department, testified he first saw the pickup truck appellant was in about 4:00 A.M., on May 29, 1973. He noticed some mattresses blow off the truck as it was proceeding toward Birmingham on Center Point Road. After the mattresses fell, the truck turned in the opposite direction across the median and drove toward Center Point. When the truck reached another opening in the median, it turned and again proceeded toward Birmingham. At that time a Birmingham Police car, which Latta had radioed, stopped behind the mattresses and turned on its blue lights. The pickup truck then turned to its right, off the highway into the parking lot of Marks-Fitzgerald Furniture Company. After making a "U" turn the truck returned to the entrance where Sgt. Latta had blocked the driveway with his unmarked car. As appellant got out of the truck, Latta asked for his driver's license and the occasion for carrying all of the furniture. Appellant replied it was given to him by Bob Rube of Steel City Mobile Homes where he worked. Latta then directed appellant to the police car where the officer had the radio dispatcher call Bob Rube for verification. Appellant then accompanied Latta to the Steel City Mobile Home lot.

Subsequently, appellant's truck was driven to the lot by another deputy. Bob Rube estimated the value of the items in appellant's pickup truck to be about $700 or $750.

Appellant did not testify in his own behalf but presented evidence that he left the lot about 4:00 A.M., to get coffee while his wife remained at the lot.

The jury found appellant guilty of larceny and fixed the value of the stolen property at $24.99. The judge sentenced appellant to six months hard labor.

I

Appellant complains that the court erred by not excluding this testimony of Sgt. Latta:

"Q. What did you do?

"A. I got out of the car, and the driver of the truck got out, Mr. Wright. I

asked him for his identification. He showed me his driver's license.

"Q. Was there any conversation at that time?

"A. Yes, sir.

"MR. COLE: We are going to object again, Your Honor, as to any conversation, and move to suppress it.

"THE COURT: Overrule.

"MR. COLE: All right.

"Q. What did he say, if anything, and what did you say to him, if anything?

"A. I asked him what the occasion was for his carrying all this furniture in back of his pickup, and he said that he was working for Steel City Mobile Homes down the street, and Mr. Bob Rube had given him all this furniture.

"Q. Okay, sir."

Counsel argues appellant's detention was custodial and the introduction of the above testimony was inadmissible without the "Miranda warnings".

In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the court stated:

"General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present."

.     .     .     .     .     .

". . . [O]ur decision does not in any way preclude police from carrying out their traditional investigatory functions."

The *"compelling atmosphere"* denounced in *Miranda,* supra, was not present when Sgt. Latta questioned this appellant. No in-custody interrogation was in progress. This was a general on-the-scene questioning of a citizen under circumstances that warranted investigation and is a well accepted police practice. Ison v. State, 281 Ala. 189, 200 So.2d 511; Burrell v. State, 45 Ala.App. 664, 235 So.2d 913.

■ An officer in the normal course of his patrol at 4:00 A.M., *can* stop a driver and ask for some identification under the circumstances depicted in this case. The question asked Charles Wright, concerning items in the truck was limited to inviting an explanation of his possession. Under these circumstances, we hold the answers given were within the permissible range of an on-the-scene investigation and not subject to the warning requirements of *Miranda,* supra. In fact, it would be absurd to require a police officer to warn every person he confronts of his rights.

II

■ Appellant contends the trial judge committed error by directing this question to a defense witness:

"THE COURT: Mrs. Overton, are you under indictment under the facts growing out of this same case that we are trying?

"MR. COLE: Mrs. Overton, let me get an objection at this time: I am going to move for a mistrial on the conduct of the Court, Your Honor.

"THE COURT: Overruled.

"MR. COLE: We except.

"THE COURT: Are you under indictment on the facts growing out of some alleged larceny out at Steel City Mobile Homes, after a tornado back on May 28, 1973?

"A. Yes, sir, I was arrested.

"THE COURT: Are the charges still against you, ma'am?

"A. Yes, sir.

"THE COURT: Let me say this to you: You don't have to testify in this case. If you testify, anything you testify here can be used against you when your case comes up for trial. Who is your lawyer?

"A. Mr. Cole.

"THE COURT: Will you take her out there and talk to her and let me know whether she wants to waive her—Have you advised with her already?

"MR. COLE: No, sir.

"THE COURT: She can claim immunity from testifying, Mr. Cole. So I wish you all would go out there. Don't anybody say anything while they are gone, because we are still in session while he advises with her.

(Thereupon, counsel for the defendant and Winnie Nell Overton leave the courtroom, and upon their return, the following proceedings were had and done:)

"THE COURT: Mrs. Overton, before you are seated, have you advised with your attorney, Mr. Cole?

"A. Yes, sir.

"THE COURT: After advising with him, is it your desire to waive your right not to testify and to testify in this case, or not to?

"A. I want to.

"THE COURT: Ma'am?

"A. I want to.

"THE COURT: Is that your advice to her, Mr. Cole?

"MR. COLE: Yes, sir."

Counsel argues that the judge's conduct was clearly erroneous and prejudicial. He insists the mere fact that a witness in a criminal case is under indictment does not per se impeach the credibility of the witness. Appellant's contention is without merit based on this ruling by Judge Pelham in Coplon v. State, 15 Ala.App. 331, 73 So. 225.

" * * * The question addressed to the witness . . . 'You are indicted about this, aren't you?' and, 'Aren't you indicted for the same thing, under charge for this same offense?' are matters about which the witness could answer, if he knew, as a concrete fact, and are questions that were therefore not improper."

■ Further appellant maintains the trial judge erred in advising this witness in the presence of the jury, of her constitutional right not to testify. As reflected by the record supra, no objection was interposed to the procedure at trial, and the question is not reviewable. Under the circumstances however, we do not believe the cautioning measures utilized by the judge for the benefit of this witness subjected the appellant to any prejudice.

### III

■ Charges 2, 3, 12, 16, 19, 21, 22 and 31, requested by the appellant were either covered by the court's oral instructions or those charges given at the appellant's insistence. The refusal of these charges was correct.

Our search of the record revealed no error.

Affirmed.

All the Judges concur.