Andrew SANVILLE, Appellant
(Defendant below),

v.

STATE of Wyoming, Appellee
(Plaintiff below).

No. 4559.

Supreme Court of Wyoming.

Aug. 20, 1976.

Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Laramie, and Philip Klein, Senior Law Student Intern, Laramie, for appellant.

V. Frank Mendicino, Atty. Gen., Cheyenne, and H. J. Arnieri, Senior Asst. Atty. Gen., Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

THOMAS, Justice.

Andrew Sanville appeals from a Judgment and Sentence entered upon his conviction, after a trial to a jury, of the crime of receiving stolen goods in violation of § 6–135, W.S. He presents two issues for review in this court. The first relates to alleged error on the part of the district court in denying Sanville's Motion to Suppress Statements in Evidence, which was followed by an appropriate objection made at trial, and which was premised upon his contention that he had been interrogated unlawfully by law enforcement officers who had not warned him of the constitutional rights available to him in accordance with the decision of the Supreme Court of the United States in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1968). His second contention is that the district court erred in allowing the county attorney to amend the amended information after the trial had begun.

The material facts are that Sanville had an acquaintance, Robert Joseph Armstrong, who was involved in the burglary of the C & M Ready Mix Company in Laramie, Wyoming, sometime on the night of July 22–23, 1974. A number of tools and several toolchests, boxes and other containers for the tools were stolen in this burglary. Circumstantial evidence in the record indicates that Sanville believed Armstrong had been involved in this burglary, and Armstrong confirmed this by his testimony. He testified that he had told Sanville of his participation in the burglary. In September while Armstrong was confined to the hospital Sanville was requested by Armstrong to remove the red toolchest from Armstrong's dwelling, and at the time Armstrong told Sanville he could have it or get rid of it in any fashion he chose. In October Sanville purchased some of the stolen tools from Armstrong for a figure that would vary, under the testimony, from $50 to $70. After the stolen tools were delivered to Sanville he made some effort at disguising some of the items, and during this period of time an employee of C & M Ready Mix, from whom Sanville was renting his house, came into Sanville's house and observed the stolen tools. He told Sanville that they were stolen, and even identified the true owner of some of the tools, another employee of C & M Ready Mix Company. Sanville and his wife, and Armstrong and his wife, then loaded the tools which Sanville had purchased in the back of Sanville's pickup, and proceeded away from Sanville's home. Sanville went almost directly to the home of the individual who Sanville was told was the true owner of the tools. He stated that he thought he had some of this individual's property, and was advised that it was out of the owner's hands because the police had already been summoned. About that time a police officer arrived on the scene and asked Sanville where he had obtained the tools. Sanville said that he had purchased them from Armstrong. The police officer then told Sanville that the tools were going to have to be taken to the station, and asked Sanville to take them down in his pickup truck. Sanville cooperated and delivered the tools to the police station.

Subsequently, in exchange for prosecutive consideration, Armstrong told police officers exactly what had happened which implicated Sanville. In December, Sanville was arrested and charged in two counts with receiving stolen goods. The first count, which was carried through to the trial, but was dismissed during the course of the trial, related to the toolchest which had been turned over to Sanville prior to the purchase of the other tools. The second count related to all the other tools.

Sanville's trial originally was set for January, 1975, but because he failed to attend in January the trial was not actually held until April. In the meantime, the Legislature had adopted an amendment to the statute which required a value of $100 instead of $25 to constitute a felony. Although the amendment to the statute had been passed by the Legislature it was not effective until sometime after the April

trial. Nevertheless, upon Sanville's request through his attorney, the trial court advised the state it must prove value in excess of $100 in order to establish a felony in Sanville's instance. Since the testimony demonstrated that the toolbox in the first count was not worth $100 the state concluded to dismiss that count. When the information originally was filed in district court it included tools in the second count which, according to testimony in the record, would have a value of more than $100 although they were charged as having a value of more than $25. Subsequently, the information was amended, and for no apparent reason some of the tools were deleted, the remainder still having a value in excess of $25. During the trial, after acquiescing in Sanville's contention that a value of more than $100 must be proved, the district court permitted the county attorney to amend the information again by including the property originally charged, which justified the jury finding of a value of more than $100.

■ As to Sanville's first contention, the doctrine of *Miranda v. Arizona,* supra, has been adopted, perhaps it should be said anticipated, by the Supreme Court of this state. *Jerskey v. State,* Wyo., 546 P.2d 173 (1976); *Dryden v. State,* Wyo., 535 P.2d 483 (1975); *Gabrielson v. State,* Wyo., 510 P.2d 534 (1973); *Moss v. State,* Wyo., 492 P.2d 1329 (1972); *Priestley v. State,* Wyo., 446 P.2d 405 (1968); *Dickey v. State,* Wyo., 444 P.2d 373 (1968); *Miskimins v. Shaver,* 8 Wyo. 392, 58 P. 411, 415, 49 L.R.A. 831 (1899). The warning requirement of *Miranda v. Arizona,* supra, however, depends upon custodial interrogation. The specific language, found in the Supreme Court opinion at 384 U.S. 444, 86 S.Ct. 1612, 16 L.Ed.2d 706 is:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege of self-incrimination. *By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.* * * *"* (Emphasis added.)

■ Furthermore, in announcing its decision in *Miranda v. Arizona,.* supra, the Supreme Court specifically noted, at 384 U.S. 477, 86 S.Ct. 1629, 16 L.Ed.2d 725:

"Our decision is not intended to hamper the traditional function of police officers in investigating crime. See *Escobedo v. Illinois,* 378 U.S. 478, 492 [84 S.Ct. 1758, 1765, 12 L.Ed.2d 977]. When an individual is in custody on probable cause, the police may, of course, seek out evidence in the field to be used at trial against him. Such investigation may include inquiry of persons not under restraint. *General on-the-scene questioning as to fact surrounding a crime or other general questioning of citizens in the fact-findng process is not affected by our holding.* * * *"* (Emphasis added.)

The overwhelming majority of cases in which a similar problem has been raised have held that the warning required by *Miranda v. Arizona,* supra, need not be given in instances such as this. The questions asked of Sanville about which he complains were propounded to him while he was in his vehicle parked at the residence of the owner of the tools. In analogous instances, involving questioning while a defendant was in or near his own vehicle or on the premises of another, the courts have concluded that the questioning was not custodial within the definition found in *Miranda v. Arizona,* supra, and that it was general on-the-scene questioning or general questioning in the fact finding process, both of which are said not to be affected by the holding in *Miranda v. Arizona,*

supra.[1] The facts surrounding the events about which Sanville complains demonstrate clearly that there was no custodial interrogation of Andrew Sanville by the police officer. *Priestley v. State,* supra. The police officer was investigating a burglary, and was simply interested in trying to establish the source of the tools which Sanville had in his pickup. There is no indication even that Sanville was a suspect at that stage of the investigation. Since he was not in custody, and the responses elicited clearly were voluntary, and the officer was engaged in general questioning in the fact finding process, there was no violation of Sanville's constitutional rights. Of particular interest because of their factual similarity are the following cases. *Wright v. State,* 54 Ala.App. 725, 312 So.2d 417 (1975); *State v. Thomas,* 104 Ariz. 408, 454 P.2d 153 (1969); *People v. Gravatt,* 22 Cal.App.3d 133, 99 Cal.Rptr. 287 (1972); *People v. Hazel,* 252 Cal.App.2d 412, 60 Cal.Rptr. 437 (1967); *People v. Beasley,* 250 Cal.App.2d 71, 58 Cal.Rptr. 485 (1967); *People v. Allison,* 249 Cal.App.2d 653, 57 Cal.Rptr. 635 (1967); *State v. Stafford,* 6 Conn.Cir. 613, 281 A.2d 827 (1971); *James v. State,* Fla.App., 223 So. 2d 52 (1969); *People v. Farnsworth,* 10 Ill.App.3d 844, 295 N.E.2d 83 (1973); *People v. Tolefree,* 9 Ill.App.3d 475, 292 N.E.2d 452 (1972); *People v. Ricketson,* 129 Ill.App.2d 365, 264 N.E.2d 220 (1970); *State v. Frizzell,* 207 Kan. 393, 485 P.2d 160 (1971); *People v. Dorner,* 66 Mich. App. 298, 238 N.W.2d 845 (1975); *State v. Barnes,* 54 N.J. 1, 252 A.2d 398 (1969);

---

1. Most of the instances considered in other courts involve facts which are much stronger for the defendant than the facts of this case, including such factors as an almost immediate arrest (in some instances there already was an arrest on some different charge), questioning which focused more directly upon the defendant, and in a number of instances more reason for the officer to suspect probable criminal involvement by the defendant at the time of questioning. The cases are: E. g., *United States v. Hickman,* 523 F.2d 323 (9th Cir. 1975), cert. den. 423 U.S. 1050, 96 S.Ct. 778, 46 L.Ed.2d 639 (1976); *United States v. Cowley,* 452 F.2d 243 (10th Cir. 1971); *United States v. Tobin,* 429 F.2d 1261 (8th Cir. 1970); *Allen v. United States,* 129 U.S.App.D.C. 61, 390 F.2d 476 (1968); *United States v. McKinney,* 379 F.2d 259 (6th Cir. 1967); *Steigler v. Anderson,* 360 F.Supp. 1286 (D.Del.1973), cert. den. 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974); *United States v. Jones,* 352 F.Supp. 369 (S.D.Ga.1972); *United States v. Hatchel,* 329 F.Supp. 113 (D.Mass.1971); *Manning v. State,* 51 Ala.App. 538, 287 So.2d 248 (1973); *State v. Tellez,* 6 Ariz.App. 251, 431 P.2d 691, 25 A.L.R.3d 1063 (1967); *People v. Hill,* 12 Cal.3d 731, 117 Cal.Rptr. 393, 528 P.2d 1 (1974); *People v. Wright,* 258 Cal. App.2d 762, 66 Cal.Rptr. 95 (1968), cert. den. 393 U.S. 896, 89 S.Ct. 154, 21 L.Ed.2d 177 (1968); *State v. Szabo,* 166 Conn. 289, 348 A.2d 588 (1974); *State v. Lief,* 4 Conn. Cir. 440, 234 A.2d 124 (1967); *Steigler v. Superior Court, in and for New Castle Co.,* Del.Supr., 252 A.2d 300 (1969), cert. den. 395 U.S. 940, 89 S.Ct. 2012, 23 L.Ed.2d 457 (1969), cert. den. 396 U.S. 880, 90 S.Ct. 160, 24 L.Ed.2d 139 (1969); *Montgomery v. United States,* D.C.App., 268 A.2d 271 (1970); *Jones v. State,* 127 Ga.App. 137, 193 S.E.2d 38 (1972); *People v. Fischetti,* 47 Ill.2d 92, 264 N.E.2d 191 (1970); *People v. Hayes,* 133 Ill.App.2d 885, 272 N.E.2d 423 (1971); *State v. Hill,* 211 Kan. 239, 505 P.2d 704 (1973); *State v. Levy,* La., 292 So.2d 220 (1974); *Duffy v. State,* 243 Md. 425, 221 A.2d 653 (1966); *People v. Coppernol,* 59 Mich.App. 745, 229 N.W.2d 913 (1975); *State v. Martin,* 297 Minn. 470, 212 N.W.2d 847 (1973); *State v. Hale,* Mo., 463 S.W.2d 869 (1971); *State v. Sykes,* 285 N.C. 202, 203 S.E.2d 849 (1974); *Schnepp v. State,* 84 Nev. 120, 437 P.2d 84 (1968); *State v. Desjardins,* 110 N.H. 511, 272 A.2d 599 (1970); *People v. Seebode,* 36 A.D.2d 660, 318 N.Y.S.2d 77 (1971); *State v. Hayes,* 273 N.C. 712, 161 S.E.2d 185 (1968); *State v. Woodall,* 16 Ohio Misc. 226, 45 Ohio Op.2d 179, 241 N.E.2d 755 (1968); *Moore v. Oklahoma,* Okl.Cr., 533 P.2d 997 (1975); *State v. Taylor,* 249 Or. 268, 437 P.2d 853 (1968); *Commonwealth v. Kloch,* 230 Pa.Super. 563, 327 A.2d 375 (1974); *Utsler v. State,* 84 S.D. 360, 171 N.W.2d 739 (1969); *Cole v. State,* Tenn.Cr.App., 512 S.W.2d 598 (1974); *Sirabella v. State,* Tex.Cr.App., 492 S.W.2d 571 (1973); *State v. Simpson,* Utah, 541 P.2d 1114 (1975); *State v. Gray,* 3 Wash. App. 146, 473 P.2d 189 (1970). A number of other cases are collected in the annotation at 31 A.L.R.3d 565, at 597, et seq. (1970).

and *Anderson v. State,* 66 Wis.2d 233, 223 N.W.2d 879 (1974).

 Turning to Sanville's second contention, the law generally, and this is the law in Wyoming, is that an information may be amended so long as the amendment is not prejudicial to the defendant and does not charge a different offense. Rule 9(c), W.R.Cr.P.; and *State v. Kusel,* 29 Wyo. 287, 213 P. 367 (1923). This offense stayed the same; the only effect of the amendment complained of was to add property to the information which would permit the state to demonstrate value in excess of $100 in accordance with the favorable ruling which Sanville's attorney had obtained from the court. The charge was the same, no different events were involved, and since Sanville previously had been advised of this particular property, clearly there was no prejudice to him. Under these circumstances there was no error in permitting the amendment of the information since the amendment essentially was one of form rather than substance.

Courts in other states have held that the amendment of an information in an instance such as this to include property not originally charged or to allege greater value is not error. *Underwood v. State,* 205 Ark. 864, 171 S.W.2d 304 (1943); *State v. Pansey,* 61 Nev. 333, 128 P.2d 464 (1942); *State v. Scrotsky,* 39 N.J. 410, 189 A.2d 23 (1963); and *State v. Martin,* 357 Mo. 368, 208 S.W.2d 203 (1948). Certainly in an instance such as this in which the property was all included in the criminal complaint originally filed, and some of it was deleted in an information which was filed, but was again included later, the amendment does not have the effect of changing, in any way, the offense which was charged, nor could it reasonably be held to be, in any way, surprising or prejudicial to the defendant.

 Sanville contends that a different offense was charged because proof of a value of less than $100, according to the judge's ruling, would have resulted in conviction of a misdemeanor only. This eventuality could not reasonably have been anticipated by the county attorney, and it would be anomalous to permit Sanville to take advantage of that favorable ruling in the fashion in which he attempts to do so. The concepts of justice apply to the state as well as to the accused in criminal trials. To permit Sanville to obtain the advantage of a ruling of the trial court raising the value to $100 in order to establish a felony, and then take further advantage of that favorable ruling by limiting the state's proof to items charged which were worth less than $100 under these circumstances would be an unjust result.

The judgment of the district court is affirmed.