LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a conviction of murder in the first degree and a sentence to life imprisonment.
According to the undisputed evidence, the bludgeoned body of Alonzo Williams, .the alleged victim, a man 56 years of age, was found in the 1200 block of Third Alley, North, Birmingham, between 10:00 and 11:00 A.M. on Sunday, April 6, 1975. His head was badly battered; his skull was fractured; and there was considerable blood on his head. Close to his body were a board, approximately a 2 X 4 about four feet long, and a rock about the size of a human head. The rock had blood and hair on it and the board had hair on it. There was testimony that the body had been dead about twelve hours.
Defendant, twenty-three years of age, had been seen with the victim at a Catfish King restaurant about twelve hours before the victim’s body was discovered. Together they left the Catfish King, which was across the street from the place where the body was found.
Police were notified and an ambulance was called soon after the body was found. Soon after the arrival of Sgt. Webb, the body was sent to the morgue, and Sgt. Webb proceeded toward the morgue. Meanwhile someone had told him about seeing the defendant with the victim the night before. On his way to the morgue, Sgt. Webb observed defendant within about a block of the place where the victim’s body was found. He asked defendant whether or not he was with the victim the night before, and defendant replied in the affirmative. Sgt. Webb then asked Sgt. Cousins to take defendant “to the City Hall with the rest of the witnesses we had at that time,” which Sgt. Cousins did. Upon completing his mission to the morgue and another short official mission, Sgt. Webb went to the City Hall where Sgt. Cousins had the witnesses, other than the defendant. Defendant had gone. Sgt. Webb looked for defendant in the vicinity where the body was found. He found defendant at 804 Twelfth Street, North, under a bed in an intoxicated condition. He and Sgt. Cousins placed him under arrest at that time and took him to the City Hall where they placed him in jail. The next day they interrogated him and obtained his written statement, after fully advising him of his rights and giving him the Miranda warnings, and after he had signed an acknowledgment of his understanding of his rights and his desire to make a voluntary statement without contacting an attorney or having one present. Defendant then said, and signed a written statement, that he got mad with Alonzo Williams in the Catfish King the night before, that they left together and, as they went into the alley, he was fussing with Alonzo Williams, whom he called “Chalkie.” He stated he threw a bottle at Chalkie, then saw blood on Chalkie’s face. He said that about that time a man by the name of Roger, whose last name defendant did not *105 know, struck Chalkie “with a large piece of what looked like concrete.” According to defendant, he then left the scene, and the next day he talked to Roger at City Hall, where the witnesses had assembled for questioning, and he and Roger agreed that “whichever one of us they put it on, we wouldn’t tell on the other.” He said that shortly after that he ran away from City Hall and was caught later hiding under a bed.
The day after he made his written statement, as above discussed, defendant made another written statement, which was also admitted in evidence. It was made after he had again been fully advised of his rights, to the same extent that he was advised and warned before making his first written statement. In his second or supplemental statement, he said that he was not telling the truth in his first statement about Roger, who turned out to be Roger Smith, and that he did not see Roger the night before. He also said in his second statement that, as he was walking down the alley with “Chalkie,” he kept asking Chalkie for some money to buy some food, and Chalkie pulled out what he thought was a knife, and defendant slapped Chalkie. Chalkie kept saying he had no money. Defendant picked up a wine bottle and hit Chalkie on the head, then pushed him again, picked up a large rock and hit him on the head with it, then picked up a board and hit him on the head. After Chalkie fell to the ground, defendant said he took Chalkie’s boots off and took down his pants, looking for money and found seventy-five cents in his right front pocket.
There was other evidence of defendant’s guilt of murder in the first degree, but the foregoing statement is sufficient to show the presentation of a jury issue and that the verdict was amply supported by the evidence. Defendant did not testify, and no testimony was offered in his behalf.
The argument is made that defendant’s conviction violates the rule requiring corroboration of a defendant’s confession or incriminating statement by evidence of the corpus delicti. The argument is based on an erroneous assumption that proof of the corpus delicti must include evidence of defendant’s guilty connection with the alleged crime. In Arnold v. State, 57 Ala.App. 172, 326 So.2d 700, 701 (1976) it was held:
“Proof of the corpus delicti does not necessarily include evidence connecting defendant with the crime. The term, meaning body of the offense, connotes the actual commission of the crime by someone. Latham v. State, 38 Ala.App. 92, 77 So.2d 499, cert. stricken, 262 Ala. 108, 77 So.2d 502; Malone v. State, 37 Ala.App. 432, 71 So.2d 99, cert. denied, 260 Ala. 699, 71 So.2d 101.”
Appellant complains of the admission in evidence of a statement by defendant to Sgt. Webb when he first saw defendant while Sgt. Webb was on his way to the morgue to which the victim’s body was being transported. Although Sgt. Webb at that time had obtained information from others that defendant had been with the victim the night before at Catfish King and that the two had engaged in an argument, the record is clear that, at the time the statement was made by defendant, no investigation had centered upon defendant and that Sgt. Webb was treating defendant as he was treating others at or near the apparent scene of the victim’s death, in questioning them for information and in asking them to go to the City Hall for further interrogation as witnesses. Sgt. Webb was intensively interrogated by defendant’s counsel on the subject. It is shown that he merely asked defendant who he was, his name, and whether he had been with the victim the night before. The fact that defendant was not asked another question until the next day, after he had been arrested and placed in jail, strengthens the conclusion that Sgt. Webb was not in the process of a custodial interrogation at the time he first saw defendant. Applicable to the situation here is what was expressed by *106 Judge DeCarlo in Wright v. State, 54 Ala. App. 725, 312 So.2d 417, cert. denied 294 Ala. 99, 312 So.2d 421, as follows:
“The ‘compelling atmosphere’ denounced in Miranda, supra, was not present when Sgt. Latta questioned this appellant. No in-custody interrogation was in progress. This was a general on-the-scene questioning of a citizen under circumstances that warranted investigation and is a well accepted police practice. Ison v. State, 281 Ala. 189, 200 So.2d 511; Burrell v. State, 45 Ala.App. 664, 235 So.2d 913.
“An officer in the normal course of his patrol at 4:00 A.M., can stop a driver and ask for some identification under the circumstances depicted in this case. The question asked Charles Wright, concerning items in the truck was limited to inviting an explanation of his possession. Under these circumstances, we hold the answers given were within the permissible range of an on-the-scene investigation and not subject to the warning requirements of Miranda, supra. In fact, it would be absurd to require a police officer to warn every person he confronts of his rights.”
The officer could not have sensibly warned defendant of his rights until he had questioned him as to his identity. We are convinced that his main objective at that time was to find witnesses. His investigation was still in progress. The accusatory stage had not commenced. The statements of defendant at that time were properly admitted in evidence. In addition, we note that the information contained in his statements was already in evidence and established as an undisputed fact.
During the time defendant was making his first written statement, he complained of some pain in his stomach. Appellant argues that his physical condition at the time vitiates the statement as evidence. There is nothing to indicate that defendant was not physically able to undergo an interrogation at the time. There is no indication that he was in any way mistreated. In fact, the evidence shows that upon his complaint of some pain in his stomach, he was asked if he wanted something in the way of medical help, and he replied in the negative.
A fingerprint technician testified that she examined a latent fingerprint lifted from the neck of a broken wine bottle found near the body of the victim, but by reason of the smudge she could not identify it as the fingerprint of any particular person. Defendant moved to exclude the witness’ testimony, and the motion was overruled. Appellant urges that the admission of such evidence probably caused confusion prejudicial to defendant. It was perfectly clear that the evidence was not admitted for the usual purpose of identifying a defendant by his fingerprint, but was for the sole purpose of showing one of the circumstances of the struggle that resulted in the death of Alonzo Williams and corroborating the incriminating statement made by defendant that he had broken a wine bottle during the time he had beaten Williams to death.
The rock, bottle neck and board found at the body of Williams were admitted in evidence. Appellant argues that the chain of custody was not established. We think otherwise. The possibility that physical objects have not changed or been altered from the time of their relevancy as evidence until the time of trial need not be established in order to make them admissible. A showing of improbability of a material alteration is sufficient. Bell v. State, Ala.Cr.App., 339 So.2d 96; Washington v. State, Ala.Cr.App., 339 So.2d 611.
We have searched the record for error prejudicial to defendant and have found none. The judgment is due to be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article, (Constitutional Amendment No. *107 328); his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.